KROGER COMPANY, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

First District (2nd Division) Nos. 1—95—1658, 1—95—2232 cons.

Opinion filed September 17, 1996.—Rehearing denied October 31, 1996.—Modified opinion filed November 12, 1996, *nunc pro tunc* September 17, 1996.

474

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solic-

itor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellants.

Hopkins & Sutter, of Chicago (Garland H. Allen, John L. Rogers III, and Scott J. Heyman, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

The Illinois Department of Revenue (Department) appeals from the circuit court's ruling in an administrative review action brought by The Kroger Company (Kroger). The Department's administrative decision determined that gains realized by Kroger in the sale of its leasehold interests in realty, which Kroger had claimed as "nonbusiness income," were "business income" and, therefore, taxable.

On administrative review, the circuit court reversed the Department's decision, finding that the Department incorrectly applied the statutory definition of business income by relying upon the "functional test." The court concluded that the gains realized by Kroger were nonbusiness income. The Department appeals, contending (1) "business income," as set forth in section 1501(a)(1) of the Illinois Income Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 15—1501(a)(1) (now 35 ILCS 5/1501(a)(1) (West 1994))), embodies the "functional test," (2) its determination was not against the manifest weight of the evidence, (3) the gain from Kroger's leasehold interests must be excluded from the numerator of the Illinois sales factor in determining Kroger's business income apportionable to Illinois, and (4) Kroger must pay penalties under section 1005 of the Illinois Income Tax Act. Ill. Rev. Stat. 1985, ch. 120, par. 10—1005 (now 35 ILCS 5/1005 (West 1994)).

At the administrative level, the parties presented the case upon a stipulation of facts and joint exhibits. Kroger, a publicly held Ohio corporation, operated food and convenience stores during fiscal year 1986 (FY86). A substantial majority of Kroger's businesses operated under leaseholds generally of 10 to 25 years. During FY86, Kroger was engaged in retail grocery business within and outside Illinois and owned four unitary subsidiaries which were engaged in the retail drug store business, also within and outside Illinois: two first-tier subsidiaries, Superx Drugs Corporation (Superx) and Hook Drugs, Inc. (Hook), and two subsidiaries of Hook: Hook Drugs, Inc., of Michigan and Hook Drugs, Inc., of Illinois.

Superx, a Michigan corporation, operated drug stores, one-half of which were adjacent to Kroger supermarkets. Hook, an Indiana corporation, was acquired by Kroger on May 28, 1985. During July,

1986, Kroger undertook a corporate restructuring program in which it sold or closed its Superx and Hook separately established drug stores and all unprofitable food stores. Kroger proceeded with the restructuring of its retail drug store business in part through a leveraged partial divestiture of most of its Superx and Hook drug stores. In its 1986 annual report, Kroger asserted that it had sold a substantial majority of its retail drug store business in FY86.

By agreement dated December 9, 1986, the assets of 658 Superx and Hook separately established drug stores and Hook's stock in Hook Drugs, Inc., of Illinois and Michigan were sold in the leveraged partial divestiture to Hook-Superx, Inc. (HSI), a newly formed privately held corporation. Hook merged into HSI. Kroger received cash totaling $411,851,959 from the sale of these drug stores. The assets sold to HSI included tangible and intangible assets. Some of the intangible assets included leasehold interests.

In these 1986 restructuring transactions, Kroger recognized both gains and losses on tangible and intangible assets sold. In 1987, Kroger filed its Illinois income tax return and an amended tax return on its own behalf and that of its subsidiaries for the taxable year ending January 3, 1987. Kroger subsequently received the refund of $461,544 that it claimed.

After conducting an audit of Kroger's returns, the Department asserted that the gains realized from the sales of Kroger's leasehold interests were business income apportionable to Illinois, pursuant to section 304 of the Illinois Income Tax Act (the IITA). Ill. Rev. Stat. 1985, ch. 120, par. 3—304 (now 35 ILCS 5/304 (West 1994)). The Department recomputed Kroger's Illinois taxable income accordingly and issued a notice of deficiency in the amount of $428,365 based on a tax liability of $718,496 and a determination that Kroger had paid $290,131 in taxes. A penalty of $74,219 was imposed pursuant to section 1005 of the IITA. Ill. Rev. Stat. 1985, ch. 120, par. 10—1005 (now 35 ILCS 5/1005 (West 1994)).

Kroger filed a timely protest to the deficiency notice, disputing the determination that gains from the sale of the leasehold interests were business income. An administrative law judge recommended the notice of deficiency be upheld in its entirety. The Department subsequently adopted the recommended decision, which recognized:

> "There are two tests to be applied in any determination of the business or nonbusiness character of an item of income: (1) the Transactional test, and; [sic] (2) the Functional test. If the item of income involved meets either of the tests, it is business income and therefore subject to apportionment. *National Realty & Investment Co. v. Department of Revenue*, 144 Ill. App. 3d 541, 494 N.E.2d 924 (1986)."

The decision concluded that the gains from the sale of the leasehold interests were business income under the functional test because prior to the sale Kroger used both the tangible and intangible property associated with the stores "for the production of business income in its retail trade or business" and sold the assets in the regular course of business.

Kroger thereafter filed a circuit court complaint for administrative review. The circuit court reversed the Department's decision on the theory that the plain meaning of business income, as defined in section 1501(a)(1), is "income deriving from transactions or actions normally conducted by a business." The court observed that section 1501(a)(1) "specifies an inclusion in business income of the sale of tangible and intangible property assets if the 'acquisition, management, and disposition' of those assets were an 'integral part of the taxpayer's trade.' " See Ill. Rev. Stat. 1985, ch. 120, par. 15—1501(a)(1) (now 35 ILCS 5/1501(a)(1) (West 1994)). The court reasoned that Kroger's business was the "sale of food and drug items" in FY86 and rejected the Department's contention that the case of *National Realty & Investment Co. v. Department of Revenue*, 144 Ill. App. 3d 541, 553, 494 N.E.2d 924 (1986) (*National Realty*), supported the use of both the functional and transactional tests because its discussion of the functional test was *obiter dictum*. The Department appeals. For reasons which follow, we reverse.

I

The Department identifies error in the circuit court's construction of the IITA's business income definition because the term is defined by two clauses, each of which has a distinct meaning. Kroger maintains the second clause of the statute is a subset of the first, relying upon the last antecedent doctrine.

The IITA provides for the allocation of nonbusiness income and the apportionment of business income. *National Realty*, 144 Ill. App. 3d at 553. Under the IITA, business income is apportioned according to a three-factor formula; nonbusiness income is allocable to Illinois only if the property is located in this State. *National Realty*, 144 Ill. App. 3d at 553.

■ The primary rule of judicial statutory construction is to ascertain and give effect to the intention of the legislature. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91, 606 N.E.2d 1111 (1992). This inquiry begins with the language of the statute and, when necessary, includes the reasons for the statute's enactment and the purposes sought to be obtained. *People ex rel. Cason v. Ring*, 41 Ill. 2d 305, 310, 242 N.E.2d 267 (1968). A statute must

be read as a whole and construed so that no word or phrase is rendered superfluous or meaningless. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990).

■ The IITA defines business income as follows:

"The term 'business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business, net of the deductions allocable thereto, and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations. Such term does not include compensation or the deductions allocable thereto." Ill. Rev. Stat. 1985, ch. 120, par. 15—1501(a)(1) (now 35 ILCS 5/1501(a)(1) (West 1994)).

Nonbusiness income is defined as all income other than business income. Ill. Rev. Stat. 1985, ch. 120, par. 15—1501(a)(13) (now ILCS 5/1501(a)(13) (West 1994)). A taxpayer's income is business income unless it is clearly classifiable as nonbusiness income. The taxpayer has the burden of demonstrating that a particular item of income is nonbusiness income. *National Realty*, 144 Ill. App. 3d at 553-54.

■ Kroger's reliance on the last antecedent doctrine is misplaced because section 1501(a)(1) does not contain a misplaced modifier. See generally *City of Mount Carmel v. Partee*, 74 Ill. 2d 371, 375-76, 385 N.E.2d 687 (1979). Rather, section 1501(a)(1) contains a compound predicate; therefore, the statute can be read as "business income" *means* the first clause and "business income" *includes* the second clause.

Although Kroger maintains that the second clause of section 1501(a)(1) merely clarifies the first clause, Kroger's argument must be rejected where a plain reading of the second clause expands the definition of business income. The first clause of section 1501(a)(1) defines business income as income arising from transactions in the regular course of business. The second clause defines business income as income from tangible and intangible property if the disposition of the property constitutes "integral parts of the taxpayer's regular trade or business operations." Ill. Rev. Stat. 1985, ch. 120, par. 15— 1501(a)(1) (now 35 ILCS 5/1501(a)(1) (West 1994)). "[R]egular course of business" is discarded in the second clause. The second clause, then, contains a different definition, not one which simply clarifies.

The second definition refers to the conditions of ownership of property by the taxpayer; it is not limited to a taxpayer's trade or business, such as Kroger's retail business, but includes "operations" of the taxpayer's business, such as the sale of leasehold interests. In its analysis of the statute, the circuit court improperly treated the

second clause as an "inclusion" and omitted the terms "business operations." The legislature did not duplicate the language of the first clause in the second clause and, therefore, must have intended to establish a second definition for business income. The plain meaning of section 1501(a)(1) embraces two definitions of business income.

■ This conclusion is supported by Illinois case law, which has defined these two definitions as the transactional and functional tests. *Dover Corp. v. Department of Revenue*, 271 Ill. App. 3d 700, 711-12, 648 N.E.2d 1089 (*Dover Corp.*), *appeal denied*, 163 Ill. 2d 552, 657 N.E.2d 618 (1995); *National Realty*, 144 Ill. App. 3d at 554.

In *National Realty*, the parties agreed that the transactional and functional tests established business income. 144 Ill. App. 3d at 554. The *National Realty* court concluded that "both the transactional and functional tests" were met under the facts presented and, therefore, the gain was taxable as business income. 144 Ill. App. 3d at 555. Contrary to Kroger's contention, *National Realty*'s discussion of the functional test, although not central to the decision, was not *obiter dictum* because the court there held that the gain was taxable as business income by finding that both tests were sufficiently met. The functional test was not mentioned as an aside or "by the way." See *Cates v. Cates*, 156 Ill. 2d 76, 80, 619 N.E.2d 715 (1993). Additionally, the *Dover Corp.* court, in discussing the definition of business income, cited *National Realty* for the proposition that section 1501(a)(1) embodies both the transactional and functional tests. 271 Ill. App. 3d at 711-12.

Since the decision in *National Realty*, the legislature has amended the definitional section of the IITA six times. See 35 ILCS 5/1501 (West 1994 & Supp. 1996). The definition of "business income," however, was not changed. A court's construction of a statute is considered part of the statute itself, unless and until the legislature amends it contrary to the interpretation. *Miller v. Lockett*, 98 Ill. 2d 478, 483, 457 N.E.2d 14 (1983). The *National Realty* and *Dover Corp.*'s interpretations of section 1501(a)(1) are, therefore, part of the statute.

■ Kroger alternatively asserts that if the second clause establishes a separate test for business income, the test is not the "functional test" espoused by the Department. The Department contends that the history of the Uniform Division of Income for Tax Purposes Act (the UDITPA) (7A U.L.A. § 1 *et seq.* (1985)), from which the IITA was modeled, and the legislative history of section 1501(a)(1) support the use of the "functional test."

The IITA, adopted in 1969, was modeled after the UDITPA, which was the first major attempt in promoting uniformity among the

states. *Caterpillar Tractor Co. v. Lenckos*, 84 Ill. 2d 102, 117-18, 417 N.E.2d 1343 (1981). The UDITPA and the IITA contain the same definitions for business and nonbusiness income. Uniform Division of Income for Tax Purposes Act, 7A U.L.A. §§ 1(a), (e) (1985); Ill. Rev. Stat. 1985, ch. 120, pars. 15—1501(a)(1), (a)(13) (now 35 ILCS 5/1501(a)(1), (a)(13) (West 1994)). The UDITPA was incorporated into article IV of the Multistate Tax Compact (MTC), which became effective in Illinois on July 1, 1967. *Lenckos*, 84 Ill. 2d at 118. Illinois subsequently withdrew from the MTC in 1975, but the IITA is construed in conformity with the UDITPA where the language of the two are identical. See generally *Lenckos*, 84 Ill. 2d at 120-21. Prior to the adoption of the IITA, commentary to the UDITPA provided that "[i]ncome from the disposition of property used in a trade or business of the taxpayer is includible within the meaning of business income." Uniform Division of Income for Tax Purposes Act, 7A U.L.A. § 1, Comment (1966), *reprinted in* 2 Multistate Corporate Income Tax Guide (CCH) ¶8805.

Kroger contends the legislative history was superseded by *Western Natural Gas Co. v. McDonald*, 202 Kan. 98, 446 P.2d 781 (1968) (*Western Natural Gas*), which interpreted the UDITPA's definition of "business income" prior to the enactment of the IITA. Although the *Western Natural Gas* court determined that "business income" included only the transactional test, another state's construction of a uniform act prior to Illinois' adoption of the act is persuasive, but not binding, authority. *People v. Mills*, 40 Ill. 2d 4, 11, 237 N.E.2d 697 (1968). Although *Western Natural Gas* was recently reaffirmed, its analysis was criticized by three dissenting justices, who recommended modifying *Western Natural Gas* to recognize both the transactional and functional tests. *In re Appeal of Chief Industries, Inc.*, 255 Kan. 640, 652-56, 875 P.2d 278, 286-89 (1994) (Six, J., joined by Lockett and Davis, JJ.).

Kroger contends the courts in other UDITPA states have overwhelmingly rejected the functional test; however, other courts have not construed the provision uniformly. The decisions from other states are not binding on the courts of Illinois but, where relevant, such decisions should be examined for "such value as Illinois courts may find in them." *Skipper Marine Electronics, Inc. v. United Parcel Service, Inc.*, 210 Ill. App. 3d 231, 239, 569 N.E.2d 55 (1991). Kroger's reliance upon other states' case law is particularly misplaced where those states recognize two different tests or have amended their law in response to judicial constructions of the definition of business income. See Iowa Code Ann. § 422.32 (Supp. 1996); 1996 Kan. Sess. Laws ch. 264, § 1; *Kewanee Industries, Inc. v. Reese*, 114 N.M. 784,

845 P.2d 1238 (1993); *Ross-Araco, Corp. v. Commonwealth,* 165 Pa. Commw. 49, 644 A.2d 235 (1994), *aff'd,* 544 Pa. 74, 674 A.2d 691 (1996). Several states recognize the two separate definitions of business income. See generally *District of Columbia v. Pierce Associates, Inc.,* 462 A.2d 1129 (D.C. 1983). Kroger's contention, therefore, does not persuade. The circuit court erred in holding that section 1501(a)(1) does not embrace the transactional and functional tests. Accordingly, the order of the circuit court is reversed.

## II

The Department next argues its finding that Kroger's gain was business income was not against the manifest weight of the evidence and the circuit court erred in reaching a different conclusion. Kroger claims there are no issues of fact for review under the manifest weight of the evidence standard because the Department's conclusion was a finding of law.

■ The findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. *Obasi v. Department of Professional Regulation,* 266 Ill. App. 3d 693, 698-99, 639 N.E.2d 1318 (1994). "The legal effect given to undisputed facts is a matter of law reviewable by an appellate tribunal, and a reviewing court is not bound by either an agency's or circuit court's conclusions of law." *Obasi,* 266 Ill. App. 3d at 699. When a court finds that the legal conclusions of an agency are erroneous, those conclusions are not entitled to deference because they involve administrative interpretation of a statute it is charged with enforcing. *Obasi,* 266 Ill. App. 3d at 699.

In the present case, the facts are undisputed. Accordingly, this court is not bound either by the Department's or the circuit court's conclusions of law. *Obasi,* 266 Ill. App. 3d at 699.

■ Kroger leased a majority of the properties used in its business. Under the functional test, the relevant inquiry is whether the property was used in the taxpayer's regular trade or business operations. *Dover Corp.,* 271 Ill. App. 3d at 712. Kroger places great emphasis on the fact that the restructuring was an extraordinary event, yet Kroger's report to the Securities Exchange Commission contradicts its argument. The report states that Kroger *"is continuously opening new food and drug stores and assessing existing stores as to possible remodeling, enlarging or closing."* (Emphasis added.) Kroger's 1986 shareholder's report states that Kroger uses a strategy of *"flexible responsiveness"* in which it continuously analyzes *"the performance of all corporate assets"* and makes *"changes when necessary"*; the restructuring was a *"direct outgrowth"* of Kroger's *"management pro-*

cess." (Emphases added.) The Department properly could have concluded that the leasehold interests were an integral part of Kroger's regular trade or business operations. See 86 Ill. Adm. Code § 100.3010 (1996); *District of Columbia v. Pierce Associates, Inc.*, 462 A.2d 1129 (D.C. 1983); *Kewanee Industries, Inc. v. Reese*, 114 N.M. 784, 845 P.2d 1238 (1993). Kroger's gains from the leasehold interests were business income and the circuit court's determination to the contrary must be reversed.

## III

Kroger next contends that even if the gain is business income, it must be excluded from the numerator of the Illinois sales factor because the sales were negotiated at Kroger's Ohio headquarters.

■ Sales other than sales of tangible personal property are included in the Illinois numerator only if the "income-producing activity" is performed in Illinois. Ill. Rev. Stat. 1985, ch. 120, par. 3—304 (now 35 ILCS 5/304 (West 1994)). When a corporation derives income from both Illinois and one or more other states, it is necessary to apportion the percentage of its income which may be taxed by this state. *Continental Illinois National Bank & Trust Co. v. Lenckos*, 102 Ill. 2d 210, 220, 464 N.E.2d 1064 (1981). Section 304 of the IITA provides that the property factor in the three-factor formula:

> "is a fraction, the numerator of which is the average value of the person's real and tangible personal property owned or rented and used in the trade or business in this State during the taxable year and the denominator of which is the average value of all the person's real and tangible personal property owned or rented and used in the trade or business during the taxable year." Ill. Rev. Stat. 1985, ch. 120, par. 3—304(a)(1)(A) (now 35 ILCS 5/304(a)(1)(A) (West 1994)).

Although Kroger maintains the income-producing activity is deemed to occur at the taxpayer's corporate headquarters, Kroger has failed to cite any authority for this proposition and section 304(a)(1)(A) negates Kroger's assertion. Ill. Rev. Stat. 1985, ch. 120, par. 3—304(a)(1)(A) (now 35 ILCS 5/304(a)(1)(A) (West 1994)). The Department correctly determined that the income-producing activity associated with Kroger's Illinois leaseholds occurred in Illinois.

## IV

Kroger next contends that it is not liable for penalties because it overpaid taxes for FY86 and its failure to embrace the functional test was reasonable.

■ Section 1005(a) of the IITA provides penalties for the underpayment of taxes unless it is shown that such failure is due to

reasonable cause. Ill. Rev. Stat. 1985, ch. 120, par. 10—1005(a) (now 35 ILCS 5/1005(a) (West 1994)). Section 1005 applies to failure to pay estimated taxes. See Ill. Rev. Stat. 1985, ch. 120, par. 8—804 (now 35 ILCS 5/804 (West 1994)). The existence of reasonable cause justifying abatement of a penalty is a factual determination that can be decided only on a case-by-case basis. *Rohrabaugh v. United States*, 611 F.2d 211, 215 (7th Cir. 1979). Reasonable cause generally has been interpreted to mean the exercise of ordinary business care. See *Du Mont Ventilation Co. v. Department of Revenue*, 99 Ill. App. 3d 263, 266, 425 N.E.2d 606 (1981).

■ Kroger insists that the penalty provision does not literally apply because it paid taxes in excess of the total asserted by the Department and the provision applies only if a tax "is not paid on or before the date required for filing." Despite Kroger's contention, a separate penalty provision applies to the failure to pay estimated taxes and not estimated payments. See Ill. Rev. Stat. 1985, ch. 120, par. 8—804 (now 35 ILCS 5/804 (West 1994)).

Kroger maintains that it established reasonable cause because other state appellate courts recognized that gains of the type realized by Kroger were nonbusiness income. As the Department points out, however, *National Realty* was decided in June of 1986; Kroger should not have ignored case law in this jurisdiction. Kroger is liable for penalties under section 1005 of the IITA. Ill. Rev. Stat. 1985, ch. 120, par. 10—1005 (now 35 ILCS 5/1005 (West 1994)).

For the foregoing reasons, the order of the circuit court must be reversed.

Reversed.

DiVITO and BURKE, JJ., concur.