HERCULES, INCORPORATED, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—02—1459

Opinion filed March 26, 2004.

Foley & Lardner, of Chicago (Fred M. Ackerson and Andrew L. Reisman, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Brian F. Barov, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff Hercules, Inc., filed a two-count second amended complaint for administrative review against defendants the Illinois Department of Revenue and Kenneth Zehnder, the Department's director, after the Department found plaintiff owed taxes on a $1.3 billion capital gain it earned in 1987. Count I of the complaint sought reversal of the Department's finding of deficiency, and count II sought attorney fees under section 7 of the Taxpayers' Bill of Rights Act (Act) (20 ILCS 2520/7 (West 2000)). The circuit court entered an order affirming the Department's finding of deficiency. Plaintiff appealed the circuit court's order, and we in turn reversed the circuit court's finding of deficiency. See *Hercules, Inc. v. Department of Revenue*, 324 Ill. App. 3d 329 (2001), *appeal denied*, 197 Ill. 2d 560 (2001). After we issued the mandate returning the case to the circuit court, plaintiff filed a motion requesting the circuit court to reinstate its claim for attorney fees and enter summary judgment in its favor on that claim. The trial court entered an order reinstating plaintiff's claim for attorney fees, but denied its motion for summary judgment and

dismissed its action. Plaintiff now appeals that order, contending that the trial court improperly denied its motion and dismissed its attorney fee claim because the Department did not have reasonable cause under section 7 of the Act to issue the notice of deficiency.

## BACKGROUND

In 1987, plaintiff, a global chemical manufacturing and aerospace company doing business in Illinois, sold its interest in a joint venture, known as Himont, and realized a $1.3 billion gain from that sale. Plaintiff reported the gain as nonbusiness income on its 1987 Illinois income tax return. After auditing plaintiff and determining that this capital gain constituted business income, the Department issued a notice of deficiency for additional taxes, interest, and penalties. Plaintiff filed a protest, and an administrative law judge (ALJ) subsequently conducted a hearing at which evidence was presented regarding the formation of Himont and its relationship to plaintiff. Plaintiff contended in a posthearing memorandum that it was not operationally integrated with Himont after Himont's formation, and thus the gain from the sale of its stock in the joint venture was not constitutionally apportionable in Illinois.

Following the hearing, the ALJ recommended that the Department sustain the notice of tax deficiency. The ALJ found that the capital gain income qualified as business income under section 1501(a)(1) of the Illinois Income Tax Act (Tax Act) (35 ILCS 5/1501(a)(1) (West 2000)). The ALJ observed that courts apply either a transactional or functional test when applying section 1501(a)(1) of the Tax Act. The ALJ found that the gain qualified as business income under the transactional test because creating and selling joint ventures was a regular practice of plaintiff.

The ALJ also found that the capital gain qualified as business income under the functional test because Himont was an asset used in plaintiff's regular trade or business. The ALJ reasoned that the income received by plaintiff was not just a result of a sale of stock but of the transfer of its entire polypropylene operation to Himont. The ALJ next found a unitary business relationship existed between plaintiff and Himont's manufacture and sale of polypropylene. The ALJ thus believed that because plaintiff and Himont were functionally integrated, they had a sufficient nexus with Illinois to allow the Department to tax plaintiff's income from the sale of stock. The Department adopted the ALJ's decision.

Plaintiff filed a petition for administrative review in the circuit court, and the circuit court in turn affirmed the Department's decision. The circuit court agreed with the ALJ that there was a unitary

business relationship between Himont and plaintiff. The court found that the Himont stock sold by plaintiff was an integral part of its regular trade or business operations and thus qualified as business income under the functional test.

The circuit court subsequently granted a motion for reconsideration filed by plaintiff and vacated its prior decision and order. Thereafter, the court issued a memorandum decision and order affirming the Department's decision "based on different application of the law to the facts from those espoused by the [ALJ]." The circuit court reversed its finding in the previous order that a unitary business relationship existed. The court also reversed its conclusion that the ALJ properly found the transactional test was satisfied. In support of that reversal the court noted the absence of evidence that plaintiff was in the business of forming and divesting itself of joint ventures. Despite its reversal of these findings, the court concluded that the functional test for business income was satisfied. In support of this conclusion, the court noted Himont was not simply a passive investment of plaintiff, but was an asset used in its regular trade and business. The court further noted that the gain from its sale was used for operational functions. The court also concluded that the commerce clause and due process clause of the United States Constitution (U.S. Const., art. I, § 8, amend. XIV) did not preclude the Department from taxing the subject gain, based on its finding that "there was an operational function between [plaintiff] and Himont when it surrendered its stock to allow for an initial public offering [which] was a means of supplying financial support to Himont."

Plaintiff appealed the circuit court's order affirming the tax to this court, and we in turn reversed that order. See *Hercules*, 324 Ill. App. 3d at 344. In our decision, we noted that the United States Supreme Court has adopted two tests to determine whether a state may apportion income of a nondomiciliary corporation: the "unitary business relationship" test and the "operational function" test. *Hercules*, 324 Ill. App. 3d at 336, citing *Allied-Signal, Inc. v. Director, Division of Taxation*, 504 U.S. 768, 787, 119 L. Ed. 2d 533, 552, 112 S. Ct. 2251, 2263 (1992). After noting the Department, in the instant case, acknowledged that the unitary test had not been satisfied, we reviewed the applicability of the operational function test to the income at issue. *Hercules*, 324 Ill. App. 3d at 336-43. Under the operational function test, a state may apportion income "when the capital transaction serves an operational rather than an investment function." *Hercules*, 324 Ill. App. 3d at 337. "The relevant inquiry in determining whether a capital transaction involving an asset serves an investment or operational function 'focuses on the objective character-

istics of the asset's use and its relation to the taxpayer and its activities within the taxing State.' " *Hercules*, 324 Ill. App. 3d at 337, quoting *Allied-Signal, Inc.*, 504 U.S. at 785, 119 L. Ed. 2d at 550, 112 S. Ct. at 2262.

We observed that *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 73 L. Ed. 2d 787, 102 S. Ct. 3103 (1982), was "instructive" in determining whether the operational function test was satisfied. *Hercules*, 324 Ill. App. 3d at 339. After analyzing the facts presented to the ALJ in light of *ASARCO*, we found no "significant" distinction between the investment at issue in *ASARCO* and plaintiff's investment in Himont. *Hercules*, 324 Ill. App. 3d at 340. Thus, we rejected the Department's argument that "there was a significant flow of value between Hercules and Himont, well beyond what the facts showed in *ASARCO*." *Hercules*, 324 Ill. App. 3d at 340. In support of our decision, we also noted that the highest courts in Minnesota and Maryland had each recently reviewed plaintiff's sale of Himont stock, the same transaction before us, and concluded that the capital gain earned from that transaction was not apportionable in the respective states over which those courts presided. *Hercules*, 324 Ill. App. 3d at 340-41.

In January 2002, this court issued the mandate transferring this case to the circuit court. In February 2002, plaintiff filed a motion seeking to reinstate and obtain summary judgment on count II of its second amended complaint, which sought attorney fees under the Act. Plaintiff contended in its motion that the Department was required to pay its attorney fees because the Department did not have "reasonable cause" under section 7 of the Act for issuing the deficiency. Plaintiff noted that the term "reasonable cause" under section 7 had not previously been interpreted and argued that it should be construed as it had been under other Illinois tax-related statutory provisions.

The Department filed a response to plaintiff's motion for summary judgment, contending that it had "reasonable cause" for issuing the deficiency and that "reasonable cause" should be construed in accordance with the standard applied by federal courts to the federal statute upon which the Act was modeled.

On May 9, 2002, following a hearing on plaintiff's motion, the circuit court entered an order reinstating plaintiff's claim for attorney fees, denying its motion for summary judgment, and dismissing the case. Although the circuit court's order did not expressly state the basis for the dismissal, the court's oral findings, which the written order incorporated, reflect that it dismissed plaintiff's case because the undisputed facts established, as a matter of law, that the Department had "reasonable cause" under section 7 of the Act for issuing the subject notice of deficiency. The court found that the proper

standard for determining whether the Department had reasonable cause was whether the Department's position was "substantially justified." The court noted, in reliance upon both federal cases and California state cases, that a "substantially justified" position was one that had a reasonable basis in law and fact. The court rejected plaintiff's argument that the "reasonable cause" language in section 7 had the same meaning as that phrase did under the Illinois statute authorizing imposition of penalties against taxpayers for nonpayment of taxes. The circuit court ultimately concluded that the Department's tax proceedings against plaintiff "did not exceed the bounds of reason" and that our prior decision did not indicate the Department lacked reasonable cause for its position.

## ANALYSIS

■ Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). In reviewing a motion for summary judgment, the trial court is required to consider affidavits, depositions, admissions, exhibits, and pleadings on file and to construe them strictly against the moving party and liberally in favor of the nonmoving party. *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11 (1993). We apply *de novo* review to orders granting summary judgment. *In re Hoover*, 155 Ill. 2d at 411.

Plaintiff contends on appeal that the trial court improperly denied its motion for summary judgment and dismissed its case because the facts established, as a matter of law, that the Department did not have "reasonable cause" for issuing the notice of deficiency in question.

■ Section 7 of the Act states in relevant part:

"The fees for an attorney *** to aid a taxpayer in an administrative hearing relating to the tax liability or in court shall be recoverable against the Department of Revenue if the taxpayer prevails in an action under the Adminstrative Review Law and the Department has made an assessment or denied a claim *without reasonable cause*." (Emphasis added.) 20 ILCS 2520/7 (West 2000).

The parties do not dispute the underlying facts in the instant case. Rather, they dispute whether those facts establish as a matter of law that the Department had "reasonable cause" under section 7 to issue the subject notice of deficiency. Our research reveals no case in which an Illinois court of review has previously addressed what it means to tax a party "without reasonable cause" under section 7 of the Act.

Plaintiff recognizes that the Act does not define the term "reasonable cause" and observes that neither the supreme court nor the appellate court has previously interpreted this phrase under section 7.

Plaintiff notes, however, that other Illinois tax statutes use the phrase "reasonable cause," that Illinois courts have interpreted the meaning of that phrase under those statutes; and that the same interpretation applied in those cases should be applied in the instant case. Specifically plaintiff notes that section 3—8 of the Uniform Penalty and Interest Act and the predecessor of section 1005 of the Tax Act provide that penalties for the underpayment of taxes shall not be imposed if the taxpayer shows the underpayment was due to "reasonable cause." 35 ILCS 5/1005 (West 1994); 35 ILCS 735/3—8 (West 2000). In addition, plaintiff cites *Kroger Co. v. Department of Revenue*, 284 Ill. App. 3d 473 (1996), as the leading case interpreting "reasonable cause."

In *Kroger*, the reviewing court addressed whether a taxpayer had "reasonable cause" under section 1005 of the Tax Act for underpaying taxes. *Kroger*, 284 Ill. App. 3d at 483-84. The court observed that "[r]easonable cause generally has been interpreted to mean the *exercise of ordinary business care,*" and that "[t]he existence of reasonable cause justifying abatement of a penalty is a factual determination that can be decided only on a case-by-case basis." (Emphasis added.) *Kroger*, 284 Ill. App. 3d at 484. The *Kroger* court ultimately held that the underpayment at issue was not supported by reasonable cause, reasoning that the taxpayer ignored an on-point case which articulated a valid legal theory upon which to impose a penalty. *Kroger*, 284 Ill. App. 3d at 484.

Defendants reject plaintiff's argument that "reasonable cause" under section 7 of the Act is synonymous with the "exercise of ordinary business care." They contend that the legislative history of the Act indicates it was modeled after the federal Omnibus Taxpayers' Bill of Rights Act (federal Act), which was enacted in 1988, one year prior to the enactment of the Illinois Act. Defendants argue that we must thus look to and follow the federal courts' interpretation of the standard included in the federal Act in order to construe "reasonable cause" under section 7 of the Illinois Act.

The federal Act amended the Internal Revenue Code (Revenue Code) to provide that a prevailing party in a tax dispute with the federal government may be awarded attorney fees if the government does not establish that its position in the proceeding was "substantially justified." Act of November 10, 1988, Pub. L. No. 100—647, § 6239. This attorney fee provision is now codified at section 7430 of the Revenue Code (26 U.S.C. §§ 7430(a)(2), (c)(4)(B)(i) (1994)), and is subject to the same substantial justification standard included in the attorney fee provision of the Equal Access to Justice Act (Justice Act) (28 U.S.C. § 2412(d) (1994)). See *Huffman v. Commissioner of Internal Revenue*, 978 F.2d 1139, 1143 (9th Cir. 1992) ("[t]he reasoning

employed by the courts under the attorneys' fees provision of the *** Justice Act applies equally to review under section 7430 [of the Revenue Code]"). Under the Justice Act, a position is substantially justified " 'if reasonable people could differ as to [the appropriateness of the contested action].' " *Pierce v. Underwood*, 487 U.S. 552, 565, 101 L. Ed. 2d 490, 504, 108 S. Ct. 2541, 2550 (1988), quoting *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982). Or, stated another way, the government's position is "substantially justified" if it has a "reasonable basis both in law and fact." See *Pierce*, 487 U.S. at 565, 101 L. Ed. 2d at 504-05, 108 S. Ct. at 2550.

We find the Department's decision to tax plaintiff was supported by "reasonable cause" regardless of whether that statutory term is construed in accordance with the "ordinary business care" standard articulated in *Kroger* and advocated by plaintiff or in accordance with the federal standard advocated by defendants. We believe that "reasonable cause" is to be determined on a case-by-case basis in the context of the law and the facts. The determination of reasonable cause involves review of the legal theory relied upon by the Department to support its action and the facts relied upon by the Department to support that theory.

■ In the prior appeal of this case, defendants relied upon the operational function test articulated by the United States Supreme Court in *Allied-Signal* to support their decision to tax the gain generated by the sale of plaintiff's interest in Himont. Plaintiff does not dispute that this was a valid legal theory which, if satisfied, would warrant apportionment of the tax in question. Under the operational function test, the State may apportion the income generated by the sale of capital when that capital serves an operational rather than an investment function. *Allied-Signal*, 504 U.S. at 787, 119 L. Ed. 2d at 552, 112 S. Ct. at 2263. "The relevant inquiry in determining whether a capital transaction involving an asset serves an investment or operational function 'focuses on the objective characteristics of the asset's use and its relation to the taxpayer and its activities within the taxing State.' " *Hercules*, 324 Ill. App. 3d at 337, quoting *Allied-Signal*, 504 U.S. at 785, 119 L. Ed. 2d at 550, 112 S. Ct. at 2262.

In our prior decision, we found that the facts in the record were insufficient to establish that the operational function test had been satisfied. *Hercules*, 324 Ill. App. 3d at 338-39. In support of that decision, we analogized the facts before us with those present in *ASARCO* and noted that the United States Supreme Court's opinion in that case was instructive. We did not, however, find that there were no facts whatsoever to support the Department's theory that the operational function test had been satisfied. Nor did we find that the

facts relied upon by the Department were categorically unrelated to the theory in question. *Hercules*, 324 Ill. App. 3d at 338-40. Indeed, we cited the facts relied upon by the Department and found the record insufficient to "support the conclusion that an integral, operational relationship existed between Hercules and Himont." *Hercules*, 324 Ill. App. 3d at 338-39. That finding did not indicate the Department's reliance on those facts was unreasonable.

We recognize that the Minnesota Supreme Court and the Court of Appeals of Maryland examined the sale of plaintiff's interest in Himont, the same transaction at issue in this case, and found that the income generated by that sale was not apportionable in the respective states over which they preside. See *Hercules Inc. v. Comptroller of the Treasury*, 351 Md. 101, 104, 716 A.2d 276, 277 (1998); *Hercules Inc. v. Commissioner of Revenue*, 575 N.W.2d 111, 113 (Minn. 1998). We note, however, that the decisions in those cases were issued after the hearing on plaintiff's administrative appeal was conducted in the instant case. Furthermore, we note that prior to these rulings, courts in both Maryland and Minnesota found that there was a legal and factual basis for apportioning income generated by the sale of plaintiff's interest in Himont. See *Hercules Inc.*, 351 Md. at 104, 716 A.2d at 277 (noting that Maryland Special Court of Appeals had previously found that Maryland could tax a portion of the capital gain it realized from the 1987 sale of plaintiff's interest in Himont); *Hercules Inc.*, 575 N.W.2d at 113 (noting that Minnesota tax court had previously found the gain generated by plaintiff's sale of its interest in Himont could be apportioned in Minnesota).

■ The decisions of the above courts, along with the trial court's initial decision in the instant case affirming the ALJ, the trial court's subsequent modified decision reaffirming the ALJ on a different basis, and our own opinion (*Hercules*, 324 Ill. App. 3d at 329), reflect that judicial review of the Department's decision to tax a portion of the income generated by plaintiff's sale required, not application of a simple formula or equation, but rather application of the law to a complex set of facts. We recognize that the prior decisions of the Minnesota tax court, the Maryland Special Court of Appeals, and the circuit court in the instant case do not in and of themselves mandate the conclusion that the Department's position was supported by reasonable cause. We note, however, that these prior decisions are relevant to the issue in question and lend support to our conclusion that the Department's decision to tax plaintiff was supported by reasonable cause. See *Pierce*, 487 U.S. at 568-69, 101 L. Ed. 2d at 506-07, 108 S. Ct. at 2551-52 (prior judicial decisions on the merits of a position taken by a government agency are relevant to, although not

necessarily dispositive of, the issue of whether the agency's position was substantially justified and thus did not warrant award of attorney fees). Whether "reasonable cause" is interpreted as exercise of ordinary business care, or as substantially justified by having a reasonable basis in both law and fact, we conclude for the reasons previously discussed that the Department had "reasonable cause" to issue the notice of deficiency.

## CONCLUSION

If the operational function test had been satisfied, the Department could have properly taxed the sale of plaintiff's interest in Himont. However, we found in our previous opinion the facts reflected by the record were insufficient to establish that the operational function test had been satisfied. *Hercules*, 324 Ill. App. 3d at 338-39. That finding does not indicate that the Department's reliance on those facts was unreasonable. That finding does not indicate the Department failed to exercise ordinary business care in relying on those facts. As previously noted, the facts were insufficient to satisfy the operational function test.

Based on the foregoing reasons, we affirm the decision of the circuit court denying plaintiff's motion for summary judgment and dismissing plaintiff's claim for attorney fees.

Affirmed.

GALLAGHER and FITZGERALD SMITH, JJ., concur.