HOLLINGER INTERNATIONAL, INC., Plaintiff-Appellee, v. GLEN L. BOWER, Director, The Department of Revenue, Defendant-Appellant.

First District (1st Division)   No. 1—04—0392

Opinion filed December 12, 2005.

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman, Solicitor General, and Mary Patricia Kerns, Assistant Attorney General, of counsel), for appellant.

Fred O. Marcus and Brian L. Browdy, both of Horwood, Marcus & Berk, Chtrd., of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

This appeal arises from an administrative review action filed by plaintiff-appellee, Hollinger International, Inc. (Hollinger), against the defendant-appellant, the Illinois Department of Revenue (Depart-

ment). The Department assessed certain penalties against Hollinger under section 1005(a) of the Illinois Income Tax Act (35 ILCS 5/1005(a) (West 2000)) (Income Tax Act) due to Hollinger's underpayment of estimated income tax for the first and second quarters of 1998. Hollinger paid the penalties assessed but sought a refund on the ground that its reliance upon the advice of its accountant constituted reasonable cause for abatement of the penalties. The Department finalized the prior assessment of penalties and Hollinger sought review in the trial court. On review, the trial court reversed the final administrative decision assessing the penalties and the Department has appealed.

On appeal we determine whether the Department's determination that penalties should be imposed upon Hollinger based on its underpayment of estimated tax installments for the first and second quarters of 1998 was against the manifest weight of the evidence. Although the trial court also reversed a penalty against Hollinger for failing to timely file its third quarter estimated taxes for 1998, the Department only appeals the trial court's reversal of the penalties imposed for the underpayment of estimated tax installments for the first and second quarters of 1998. Therefore, our review is limited to these penalties only. Before we analyze the question on appeal, we set forth our standard of review and the relevant tax law.

In an administrative review action, the appellate court reviews the agency's decision and not the determination of the trial court. *Metropolitan Water Reclamation District of Greater Chicago v. Department of Revenue*, 313 Ill. App. 3d 469, 474, 729 N.E.2d 924 (2000). We note that "the findings and conclusions of an administrative agency are *prima facie* correct and will not be disturbed unless they are against the manifest weight of the evidence. [Citation.]" *Soho Club, Inc. v. Department of Revenue*, 269 Ill. App. 3d 220, 228, 645 N.E.2d 1060 (1995). The reviewing court's function is not to "reweigh the evidence or make an independent determination of the facts." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992). The decision of an administrative agency is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson*, 153 Ill. 2d at 88.

■ Specifically, an agency's determination as to whether reasonable cause existed in justifying the abatement of a tax penalty will be reversed only if the agency's decision was against the manifest weight of the evidence and only if the opposite conclusion was clearly evident. *PPG Industries, Inc. v. Department of Revenue*, 328 Ill. App. 3d 16, 21, 765 N.E.2d 34 (2002). The existence of reasonable cause justifying abatement of a tax penalty is a factual determination that is to be

decided only on a case-by-case basis. *PPG Industries, Inc.*, 328 Ill. App. 3d at 21. The taxpayer has the burden of proving by competent evidence that the proposed assessment is not correct. *Fillichio v. Department of Revenue*, 15 Ill. 2d 327, 333, 155 N.E.2d 3 (1958). With regard to questions relating to "a statute that an agency is charged with enforcing, the agency's interpretation is entitled to substantial weight and deference, but it does not bind the court and will be rejected when erroneous." *Peoria & Pekin Union Ry. Co. v. Department of Revenue*, 301 Ill. App. 3d 736, 740, 704 N.E.2d 884 (1998).

■ The "starting point" for taxation of a corporation in Illinois is set forth in section 201(a) of the Income Tax Act, which states, "[a] tax measured by net income is hereby imposed on every *** corporation *** [for] the privilege of earning or receiving income in or as a resident of this State." 35 ILCS 5/201(a) (West 2000); *Rockwood Holding Co. v. Department of Revenue*, 312 Ill. App. 3d 1120, 1123-24, 728 N.E.2d 519 (2000). The Income Tax Act defines "net income" in section 202 as "that portion of [the taxpayer's] base income *** which is allocable to this State *** less the standard exemption allowed by Section 204 and the deduction allowed by Section 207." 35 ILCS 5/202 (West 2000); *Rockwood Holding Co.*, 312 Ill. App. 3d at 1124. In general, the "base income" for a corporation means "an amount equal to the taxpayer's taxable income for the taxable year." 35 ILCS 5/203(b)(1) (West 2000); *Rockwood Holding Co.*, 312 Ill. App. 3d at 1124. "Taxable income" generally means "the amount of *** taxable income properly reportable for federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code." 35 ILCS 5/203(e)(1) (West 2000); *Rockwood Holding Co.*, 312 Ill. App. 3d at 1124. Thus, the Income Tax Act " 'piggy-backs' onto the federal calculation of income and uses federal taxable income as the premise for tax liability. [Citations.]" *Rockwood Holding Co.*, 312 Ill. App. 3d at 1124. "[F]ederal taxable income is the starting point when determining a corporation's state income tax liability." *Peoria & Pekin Union Ry. Co.*, 301 Ill. App. 3d at 740.

■ Section 803 of the Income Tax Act provides, in relevant part:
"Payment of Estimated Tax.

(a) Every taxpayer other than an estate, trust, partnership, Subchapter S corporation or farmer is required to pay estimated tax for the taxable year, in such amount and with such forms as the Department shall prescribe, if the amount payable as estimated tax can reasonably be expected to be more than (i) $250 for taxable years ending before December 31, 2001 and $500 for taxable years ending on or after December 31, 2001 or (ii) $400 for corporations.

(b) Estimated tax defined. The term 'estimated tax' means the excess of:

(1) The amount which the taxpayer estimates to be his tax under this Act for the taxable year, over

(2) The amount which he estimates to be the sum of any amounts to be withheld on account of or credited against such tax.

\*\*\*

(d) There shall be paid 4 equal installments of estimated tax for each taxable year, payable as follows:

| Required Installment: | Due Date: |
|---|---|
| 1st | April 15 |
| 2nd | June 15 |
| 3rd | September 15 |
| 4th | \*\*\* Corporations: December 15." |

35 ILCS 5/803(a), (b), (d) (West 2000).

Section 804 of the Income Tax Act provides, in relevant part:

"Failure to Pay Estimated Tax.

(a) In general. In case of any underpayment of estimated tax by a taxpayer, except as provided in subsection (d) or (e), the taxpayer shall be liable to a penalty in an amount determined at the rate prescribed by Section 3—3 of the Uniform Penalty and Interest Act upon the amount of the underpayment (determined under subsection (b)) for each required installment.

(b) Amount of underpayment. For purposes of subsection (a), the amount of the underpayment shall be the excess of:

(1) the amount of the installment which would be required to be paid under subsection (c), over

(2) the amount, if any, of the installment paid on or before the last date prescribed for payment.

(c) Amount of Required Installments.

(1) Amount.

(A) In General. Except as provided in paragraph (2), the amount of any required installment shall be 25% of the required annual payment.

(B) Required Annual Payment. For purposes of subparagraph (A), the term 'required annual payment' means the lesser of

(i) 90% of the tax shown on the return for the taxable year, or if no return is filed, 90% of the tax for such year, or

(ii) 100% of the tax shown on the return of the taxpayer for the preceding taxable year *if a return showing a liability for tax was filed by the taxpayer for the preceding taxable year* and such preceding year was a taxable year of 12 months.

* * *

(e) The penalty imposed for underpayment of estimated tax by subsection (a) of this Section shall not be imposed to the extent that the Department or his designate determines, pursuant to Section 3—8 of the Uniform Penalty and Interest Act that the penalty should not be imposed." (Emphasis added.) 35 ILCS 5/804(a), (b), (c), (e) (West 2000).

■ Section 904(a) of the Income Tax Act provides that if the Department finds that the amount of tax shown on the return is less than the correct amount, it shall issue a notice of deficiency to the taxpayer which shall set forth the amount of tax and penalties proposed to be assessed. 35 ILCS 5/904(a) (West 2000).

Section 1005(a) of the Income Tax Act requires that if any amount of tax to be shown on a return is not paid on or before the date required for filing such return, a penalty shall be imposed in the manner and rate prescribed by the Uniform Penalty and Interest Act (35 ILCS 735/3—1 *et seq.* (West 2000)). 35 ILCS 5/1005(a) (West 2000).

■ Section 3—3(b—5)(1) of the Uniform Penalty and Interest Act states:

"This subsection is applicable to returns due on and after January 1, 1998 and on or before December 31, 2000. A penalty of 20% of the tax shown on the return or the tax required to be shown due on the return shall be imposed for failure to pay:

(1) the tax shown due on the return on or before the due date prescribed for payment of that tax, an amount of underpayment of estimated tax, or an amount that is reported in an amended return timely filed as required by subsection (b) of Section 506 of the Illinois Income Tax Act (penalty for late payment or nonpayment of admitted liability)[.]" 35 ILCS 735/3—3(b—5)(1) (West 2000).

Section 3—8 of the Uniform Penalty and Interest Act states:

"No penalties if reasonable cause exists. The penalties imposed under the provisions of Sections 3—3, 3—4, 3—5, and 3—7.5 of this Act shall not apply if the taxpayer shows that his failure to file a return or pay tax at the required time was due to reasonable cause. Reasonable cause shall be determined in each situation in accordance with the rules and regulations promulgated by the Department. A taxpayer may protest the imposition of a penalty under Section 3—3, 3—4, 3—5, or 3—7.5 on the basis of reasonable cause without protesting the underlying tax liability." 35 ILCS 735/3—8 (West 2000).

Section 700.400 of the Department's regulations establishes a "waiver rule" where the imposition of a tax penalty may be abated if reasonable cause is found. 86 Ill. Adm. Code § 700.400 (2001). Section 700.400 provides, in pertinent part:

"Reasonable Cause

***

b) The determination of whether a taxpayer acted with reasonable cause shall be made on a case by case basis taking into account all pertinent facts and circumstances. The most important factor to be considered in making a determination to abate a penalty will be the extent to which the taxpayer made a good faith effort to determine his proper tax liability and to file and pay his proper liability in a timely fashion.

c) A taxpayer will be considered to have made a good faith effort to determine and file and pay his proper tax liability if he exercised ordinary business care and prudence in doing so. A determination of whether a taxpayer exercised ordinary business care and prudence is dependent upon the clarity of the law or its interpretation and the taxpayer's experience, knowledge, and education. Accordingly, reliance on the advice of a professional does not necessarily establish that a taxpayer exercised ordinary business care and prudence, nor does reliance on incorrect facts such as an erroneous information return.

(d) The Department will also consider a taxpayer's filing history in determining whether the taxpayer acted in good faith in determining and paying his tax liability. Isolated computational or transcriptional errors will not generally indicate a lack of good faith in the preparation of a taxpayer's return.

* * *

(f) Relevant factors used by the Department in determining the existence of reasonable cause.

* * *

(5) Was ordinary business care and prudence exercised? In the absence of new or unusual circumstances, most filing and payment requirements are common knowledge or are readily available to most taxpayers. If the taxpayer did all that could be reasonably expected of him or her and was still unable to file or pay on time, reasonable cause may be present." 86 Ill. Adm. Code § 700.400 (2001).

In order to review the propriety of the tax penalty at issue, we must determine whether Hollinger exercised ordinary care in measuring its tax liability. *PPG Industries, Inc.*, 328 Ill. App. 3d at 18. Hollinger argues that it exercised ordinary business care and prudence because it properly relied upon its accountant to calculate the taxes at issue and that such reliance was reasonable. The Department responds that there was evidence in the record to support the Department's determination that Hollinger did not have reasonable cause to justify an abatement of the penalties at issue.

The following background facts are relevant to the disposition of whether Hollinger exercised ordinary business care and prudence.

Hollinger, through its subsidiaries and affiliates, is in the business of publishing English language newspapers and magazines in the United States, United Kingdom, Canada, and Israel. It is a Delaware corporation that maintains a principal executive office in Chicago, Illinois. Hollinger files consolidated federal and state income tax returns.

To prepare and file certain federal and Illinois returns, Hollinger used Gray Hunter Stenn, a "regional" accounting firm in Marion, Illinois. David Haas, a certified public accountant, was a partner at Gray Hunter Stenn and was in charge of the Hollinger account during the applicable time period. Haas calculated the federal and state income tax returns for Hollinger and estimated quarterly tax computation. Section 803(a) of the Income Tax Act, set forth in full above, provides that every corporation whose estimated taxes "can reasonably be expected to be more than" $400 is required to pay estimated tax for the taxable year. 35 ILCS 5/803(a) (West 2000). Estimated tax means the excess of the amount which the taxpayer estimates to be his tax for the taxable year, over the amount which he estimates to be the sum of any amounts to be withheld on account of or credited against such tax. 35 ILCS 5/803(b) (West 2000). Section 803(d) of the Income Tax Act requires that a taxpayer's annual estimated tax be paid in four equal installments, which are essentially divided into quarters over the course of a year. 35 ILCS 5/803(d) (West 2000). Haas estimated quarterly tax computation on behalf of Hollinger during 1997 and 1998.

At the administrative hearing, Haas testified that he prepared Hollinger's estimated taxes for the first and second quarters of 1998. He indicated that he prepared Hollinger's Illinois tax installment for the first quarter of 1998 in late February or the beginning of March in 1998. Haas said that he prepared the calculation using what he called the "safe harbor" method set forth in section 804(c)(1)(B)(ii) of the Illinois Income Tax Act. 35 ILCS 5/804(c)(1)(B)(ii) (West 2000). As set forth above, section 804 is a penalty provision that penalizes a taxpayer in the case of any underpayment of estimated tax. 35 ILCS 5/804 (West 2000). Under section 804(c)(1)(B), a taxpayer can avoid the mandatory imposition of a penalty if its required annual payment meets the guidelines of section 804(c)(1)(B)(i) or section 804(c)(1)(B)(ii) (35 ILCS 5/804(c)(1)(B)(ii) (West 2000)). To determine whether a mandatory penalty shall be imposed under section 804(c)(1)(B)(ii), the term "required annual payment" means "100% of the tax shown on the return of the taxpayer for the preceding taxable

year *if a return showing a liability for tax was filed by the taxpayer for the preceding taxable year.*" (Emphasis added.). 35 ILCS 5/804(c)(1)(B)(ii) (West 2000).

Even though there had been no tax return filed for 1997 at that time, Haas said he calculated the first quarter estimated tax installment for 1998 using what he called the "safe harbor rules" under section 804(c)(1)(B)(ii). Because the returns for 1997 had not yet been finished, Haas also said that he had to estimate what Hollinger's Illinois income tax liability would be for 1997 before he could calculate the estimated tax payment for the first quarter of 1998.

To make this estimate, Haas stated that he used information provided by Hollinger and by two other accounting sources that Hollinger had employed to complete different parts of its federal and state income tax returns. Upon reviewing this data, Haas estimated that the Illinois tax liability for 1997 would be approximately $240,000. Because Haas' information indicated that an estimated "overpayment" from Hollinger's projected taxes for 1997 was greater than the tax he estimated for the first quarter, Haas determined that Hollinger need not make any payment for the first quarter of 1998.

Months later and even though a tax return for 1997 still had not been filed, Haas calculated the second quarter estimated tax installment using what he referred to as a "safe harbor calculation" under section 804(c)(1)(b)(ii). Relying upon his prior projection of $240,000 as Hollinger's Illinois income tax liability for 1997, Haas advised Hollinger to make a payment of $62,500 as its second quarter installment for 1998.

The record also shows that Haas had prepared federal and state income tax returns for 20 years, that he had been preparing such services for Hollinger since 1987, and that Haas had prepared "hundreds" of returns on Hollinger's behalf. In August of 1998, Haas completed Hollinger's federal and Illinois tax return for 1997 and found that the Illinois return showed that Hollinger did not have income, but instead showed a loss. Because the Illinois return for 1997 showed a loss, Haas admitted he should not have used a "safe harbor calculation" under section 804(c)(1)(B)(ii) for calculating Hollinger's first and second installments for 1998.

At the hearing, Roland McBride testified that he was employed by American Publishing Company, a subsidiary owed by Hollinger. McBride said that he was an accountant and that most of his duties revolved around accounting. As "group controller," he was responsible for "internal and external financial reporting, financial statement preparation, audit control and direction for [the] division, income tax filings and preparation work on both payroll and federal and state

income taxes as well as local income tax issues, depreciation accounting, [and] most general accounting functions that would be performed in a corporation [of its] size." He said he knew Haas and that Haas and his firm did tax preparation work for Hollinger at the local, state, and federal level. McBride said that Haas prepared estimated tax returns from McBride's division as well as the other Hollinger divisions and that Haas submitted these returns for filing. In order to assist Haas, McBride said that he and his staff would "prepare our financial statements for various subsidiaries within American Publishing Company" and would provide Haas with financial information and statements. Haas then took that information and prepared a form for Hollinger to sign. McBride said he had no reason to believe that Haas' methods for calculating estimated payments were unreliable and that he had "complete confidence" in Haas. In all of the years of working with Haas, McBride said, Hollinger had never made an underpayment of an estimated tax payment, Hollinger relied on Haas' calculations to determine the payment of taxes, and he never had any reason to doubt Haas' calculations.

On February 12, 2000, the Department notified Hollinger that it proposed to penalize Hollinger for its underpayment of estimated taxes for the first and second quarters of 1998. Hollinger paid the proposed penalties but then sought a refund for them. Hollinger's refund claim was rejected by the Department and Hollinger requested an evidentiary hearing.

After an evidentiary hearing, the administrative law judge (ALJ) found in favor of the Department and recommended that the Department's prior denial of Hollinger's refund claim be upheld. The ALJ based its finding on the fact that Hollinger failed to exercise ordinary business care when attempting to determine its estimated tax payments for the first two quarters of 1998. In response, Hollinger sought administrative review in the trial court.

The trial court reversed the ALJ's decision, finding that there was "no rational basis, let alone a preponderance of the evidence, supporting the agency's insinuation that Hollinger, a publicly-held company, knowingly allowed, much less directed Haas to underestimate its tax installments for the quarters in question." The trial court further found that the relevant question for the ALJ was "whether Hollinger reasonably relied on Haas to perform the calculations in the first place." It then found that there was no "rational basis" for the conclusion that Hollinger's reliance on Haas to perform the tax calculations was unreasonable because Haas had more than 20 years' experience in preparing federal and state corporate income tax returns, had prepared hundreds of estimated tax calculations throughout his career, had

extensive experience with Hollinger's federal and state income tax returns, had been a partner in charge of Hollinger for several years, and had never underestimated Hollinger's taxes.

As a preliminary matter, section 804 is not a method for calculating estimated taxes and Hollinger was not entitled to use what Haas called the "safe harbor calculation" under section 804(c)(1)(B)(ii) to calculate the estimated taxes at issue. As set forth above, section 803 of the Income Tax Act clearly provides the method for calculating estimated tax and that formula is based on the amount the taxpayer estimates to be his tax for the taxable year. 35 ILCS 5/803 (West 2000). Section 803 of the Income Tax Act requires taxpayers "to declare and pay estimated tax in four equal installments." *Continental Illinois National Bank & Trust Co. of Chicago v. Lenckos*, 115 Ill. App. 3d 538, 550, 450 N.E.2d 844 (1983), *rev'd on other grounds*, 102 Ill. 2d 210, 464 N.E.2d 1064 (1984). In contrast, section 804 is clearly a penalty provision for failure to pay (or underpaying) an estimated tax. 35 ILCS 5/804 (West 2000); *Kroger Co. v. Department of Revenue*, 284 Ill. App. 3d 473, 484, 673 N.E.2d 710 (1996). Specifically, section 804 of the Income Tax Act "imposes a penalty on taxpayers who fail to pay (or who underpay) any such quarterly installment." *Lenckos*, 115 Ill. App. 3d at 550.

In our view, sections 803 and 804 are also clear and uncomplicated. Section 803(a) establishes the general requirement that every corporate taxpayer whose taxes "can reasonably be expected to be more than" $400 must pay estimated tax for the taxable year. 35 ILCS 5/803(a) (West 2000). "Estimated tax" means the excess of the amount which the taxpayer estimates to be his tax for the taxable year over the amount which he estimates to be the sum of any amounts to be withheld on account of or credited against such tax. 35 ILCS 5/803(b) (West 2000). Section 804, however, imposes a penalty on a taxpayer when it underpays the estimated tax. 35 ILCS 5/804 (West 2000). The clear language of section 804 shows that it is a penalty provision for failure to pay or underpaying estimated tax and is not a general provision by which a taxpayer can calculate its estimated tax. Under section 804(c)(1)(B), a taxpayer can avoid paying a penalty in the event the payment of estimated tax meets the required annual payment, defined as the lesser of: (1) "90% of the tax shown on the return for the taxable year, or if no return is filed, 90% of the tax for such year" (35 ILCS 5/804(c)(1)(B)(i) (West 2000)), or (2) "100% of the tax shown on the return of the taxpayer for the preceding taxable year if a return showing a liability for tax was filed by the taxpayer for the preceding taxable year" (35 ILCS 5/804(c)(1)(B)(ii) (West 2000)). Further, section 804(b) indicates that for purposes of determining the amount of

underpayment of estimated tax in section 804(a) (which imposes the penalty), the amount of the underpayment shall be the excess of the amount of the installment required to be paid in section 804(c) over the amount of the installment paid on or before the last date prescribed for payment, if any. 35 ILCS 5/804(a), (b), (c) (West 2000). When read together, it is clear that subsections (a), (b), and (c) of section 804 relate to whether a penalty will be imposed and how a required annual payment is calculated for purpose of the penalty provision; these provisions are not a general method for calculating estimated taxes.

In interpreting a statute, the primary objective of the reviewing court is to "ascertain and give effect to the intention of the legislature." *Metzger v. DaRosa*, 209 Ill. 2d 30, 34, 805 N.E.2d 1165 (2004). The statute's plain language "is the best indicator of the legislature's intent." *Metzger*, 209 Ill. 2d at 34-35. A reviewing court is not "at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express." *Petersen v. Wallach*, 198 Ill. 2d 439, 446, 764 N.E.2d 19 (2002). Section 803 of the Income Tax Act sets forth the proper method for a taxpayer to calculate its estimated tax payable for the taxable year. On the other hand, section 804 is clearly a penalty provision that allows for avoidance of a tax penalty only if the payments made are not underestimated using the definition of "required annual payment" in sections 804(c)(1)(B)(i) and (ii), none of which were met here.

The ALJ found that Haas did not measure Hollinger's quarterly estimated tax payments using section 803(b), but instead erroneously used section 804(c)(1)(B)(ii) and based his calculation of Hollinger's estimated taxes for 1998 on an estimate of what he thought Hollinger's 1997 tax return would be. At the administrative hearing, Haas did not explain why he chose to use section 804(c)(1)(B)(ii), a penalty provision, instead of calculating the estimated taxes for the first two quarters of 1998 using section 803(b), which is the proper formula for calculating estimated taxes. The ALJ concluded that Haas "subordinated" the legislative intent of section 803, "that a taxpayer define and calculate its estimated tax based on the current year's income," in favor of using the so-called "safe harbor provisions" under section 804(c)(1)(B), which allow avoidance of a penalty only under the definition of "required annual payment" set forth above. Specifically, the ALJ found that the safe harbor rules under section 804(c)(1)(B) provide when a "taxpayer errs [in] calculating its estimated tax for the current year, it will not be penalized for a given quarter so long as it has paid at least one quarter of 90% of the current year's liability, or

one quarter of 100% of the prior year's liability, so long as it filed a return for a full year, and the return showed a liability for that prior year."

The ALJ recognized that section 804 was enacted as a "financial incentive" to ensure that estimated taxes were timely paid, but the legislature created a "safe harbor" to "protect a taxpayer that makes a mistake when attempting to estimate its current year's tax." In particular, he concluded that Hollinger could not take advantage of either of section 804(c)(1)(B)'s "safe harbors" because Hollinger did not attempt to calculate its first two estimated tax installments by reference to its 1998 income (the method under section 804(c)(1)(B)(i)) and could not take advantage of section 804(c)(1)(B)(ii) because Hollinger "reported a net loss on its 1997 income tax return."

The ALJ further found that the "interrelationship" between sections 803 and 804 of the Income Tax Act was "not esoteric, complicated, or obscure," and that section 804 was clearly a penalty provision, yet Haas treated section 804(c)(1)(B) not as a "safe harbor" but as the formula for calculating estimated taxes for 1998. According to the ALJ, this was true even when Haas "knew Hollinger was realizing significantly more net income in 1998 than it had during 1997," but chose to calculate Hollinger's 1998 estimated tax payments "by reference to what he thought was Hollinger's significantly lower tax liability for the prior year."

We agree with the ALJ that Haas should have used section 803 of the Income Tax Act to calculate Hollinger's estimated taxes. Further, even if section 804 were the proper section to calculate estimated taxes (which it is not), Haas improperly relied upon section 804(c)(1)(B)(ii) because no tax return showing a liability for 1997 had been filed. As noted above, the agency's interpretation of statutory provisions is entitled to substantial weight and deference and such an interpretation will not be rejected unless erroneous. *Peoria & Pekin Union Ry. Co.*, 301 Ill. App. 3d at 740. Here, the ALJ's finding that sections 803 and 804 of the Income Tax Act are clear and uncomplicated was not erroneous, and we conclude that such a determination was not against the manifest weight of the evidence.

Despite the clarity of sections 803 and 804, Hollinger claims that reasonable cause exists to abate the penalties under section 3—8 of the Uniform Penalty and Interest Act because Hollinger relied on the advice of Haas, who had been provided with all of the necessary documents for calculating the required installments and had properly calculated Hollinger's taxes in past. Because there is evidence in the record to support the Department's conclusion that Hollinger did not exercise ordinary care in measuring its tax liabilities, we reject this claim.

The record shows that Haas had 20 years of accounting experience. Over the years that he represented Hollinger, Haas filed hundreds of federal and state quarterly estimated tax calculations on Hollinger's behalf. Haas testified that he was aware of the safe harbor rules and a company "could pay one-fourth of either 100 percent of the prior year tax, assuming there was a tax for the prior year, or 90 percent of the estimated current income tax liability." Despite admitting that section 804(c)(1)(B)(ii) requires the filing of a return showing a tax liability for the preceding taxable year, Haas used this section to calculate Hollinger's first two required installments for 1998. Because there was no Hollinger tax return on file for 1997, Haas said that he had to "estimate what the tax liability for Hollinger for 1997 would have been." Although he was an experienced accountant, Haas' testimony shows that he ignored the plain language of section 803, which is the proper method to use for the purpose of calculating estimated tax for the taxable year. 35 ILCS 5/803 (West 2000). Haas also ignored the language of section 804(c)(1)(B)(ii), that a tax return showing a tax liability for the preceding year must be on file for purposes of determining whether an underpayment has occurred, and he erroneously chose to proceed using an "estimate" of what the 1997 return would have been. As we noted above, even if section 804 were a proper method for calculating estimated tax (which it is not), Haas could not have used section 804(c)(1)(B)(ii) because no tax return showing a liability for 1997 had been filed.

Given the actions of Haas, Hollinger, which itself employed other experienced accountants, seeks a determination that reasonable cause existed to abate the penalties imposed by the Department on the ground that Hollinger relied on the advice of Haas.

In its brief, Hollinger admitted that it had not filed an Illinois income tax return for 1997 when the first and second quarter installments were calculated for 1998. Haas' testimony confirms that Hollinger knew that Haas was using the safe harbor rules around the time that the installment payment for the second quarter was being calculated. Specifically, Haas stated, "I normally would call Craig Holick [who was Hollinger's manager of corporate finance] to let him know in advance of my fax sheet what the payment would be and I remember—I think I remember that I had told him that I had calculated—done two calculations, the current year tax and the safe harbor and that the safe harbor would apply and that he could pay the lower amount." Haas indicated that he determined in August of 1998 that there was a net operating loss for the 1997 tax year. He also said that because of the net operating loss discovered for 1997, a safe harbor payment would not apply, yet neither he nor Hollinger made

any attempt to file an amended tax return or to correct the error made with respect to calculating the estimated tax for the first and second quarters of 1998.

■ Section 700.400(c) of the Department's regulations provides that a taxpayer will be considered to have made a good-faith effort to determine and file and pay his proper tax liability if he exercised ordinary business care and prudence in doing so. 86 Ill. Adm. Code § 700.400(c) (2001). A determination of whether a taxpayer exercised ordinary business care and prudence is dependent upon the clarity of the law or its interpretation and the taxpayer's experience, knowledge, and education. 86 Ill. Adm. Code § 700.400(c) (2001). Further, section 700.400(f)(5) states that most filing and payment requirements are common knowledge in the absence of new or unusual circumstances. 86 Ill. Adm. Code § 700.400(f)(5) (2001).

■ Here, the statutory sections at issue were clear and interpretable without confusion. Hollinger presented no evidence of any new or unusual circumstances indicating that the requirement to pay estimated tax under section 803 could not be determined or satisfied. As we noted above, the ALJ concluded that sections 803 and 804 were clear and that Hollinger, by way of Haas, ignored the provisions of section 803 and erroneously applied section 804(c)(1)(B)(ii) for the purpose of calculating its estimated taxes for the first two quarters of 1998.

The record also supports the ALJ's finding that Hollinger was a sophisticated taxpayer with a high degree of experience, knowledge, and education. The ALJ noted that Hollinger is a multinational unitary business that includes 88 domestic subsidiaries and 25 foreign subsidiaries. The ALJ also observed that McBride was an experienced accountant. At the hearing, McBride testified that he was an accountant and was the chief financial officer of the American Publishing Company. As group controller, McBride said he was responsible for internal and external financial reporting, financial statement preparation, audit control, income tax filings, and preparation work on federal and state income taxes. The ALJ observed that "McBride did not testify that he [was unaware of] what Hollinger's estimated tax responsibilities were." Further, the ALJ found that Hollinger used at least two other accountants to "accumulate and/or compile" the financial information Haas used to calculate its estimated tax. Based on these findings, the ALJ concluded that as the taxpayer, Hollinger had "experienced, knowledgeable, and educated employees and agents who labor on its behalf." The ALJ further stated "[l]ogic dictates and applicable law reflects, that the greater a taxpayer's education, knowledge and experience, the less likely it will be ignorant of the various and sundry laws applicable to its business."

Because Hollinger was a sophisticated corporate entity and McBride himself was an experienced accountant, we find that there was evidence to support the ALJ's finding with regard to Hollinger's experience, knowledge, and education. Further, because of Hollinger's business experience in preparing tax filings, the basic filing requirements of section 803 could be considered common knowledge and readily available to the taxpayer.

Significantly, courts reviewing the decision of an administrative agency "generally accord the agency broad discretion when making decisions based on the statutes that they must enforce and accord great deference to an agency's interpretation of its own regulations." *LaBelle v. State Employees Retirement System*, 265 Ill. App. 3d 733, 638 N.E.2d 412 (1994). Because of this deference, we are not prepared to disturb the ALJ's conclusion that sections 803 and 804 are clear and uncomplicated. Further, we are also required to give deference to an administrative agency's findings of fact. *Chicago & North Western Transportation Co. v. Illinois Commerce Comm'n*, 230 Ill. App. 3d 812, 818-19, 596 N.E.2d 42 (1992). As we noted above, there is evidence in the record here to support the ALJ's findings that Hollinger was a sophisticated business entity and its reliance upon Haas did not establish the exercise of ordinary business care and prudence under the statute.

Further, section 803(a) of the Income Tax Act imposed the clear responsibility on Hollinger, and no one else, to pay the proper amount of estimated tax for the first and second quarters of 1998. 35 ILCS 5/803(a) (West 2000); 86 Ill. Adm. Code § 700.400(c) (2001). Under federal law, a taxpayer's reliance on tax advisors is not reasonable cause for failure to file a tax return on time because the responsibility for assuring a timely filing rests squarely on the taxpayer. *Logan Lumber Co. v. Commissioner of Internal Revenue*, 365 F.2d 846, 854 (5th Cir. 1966). Likewise, in the instant case, section 803 of the Income Tax Act imposes a clear responsibility on every corporate taxpayer, whose taxes "can reasonably be expected to be more than" $400, to pay estimated tax for the taxable year. 35 ILCS 5/803(a) (West 2000). Moreover, reliance on a tax expert cannot function as a substitute for compliance with an unambiguous statute. *United States v. Boyle*, 469 U.S. 241, 251, 83 L. Ed. 2d 622, 631, 105 S. Ct. 687, 693 (1985). Section 700.400(c) also provides that "reliance on the advice of a professional [will] not necessarily establish that a taxpayer exercised ordinary business care and prudence." 86 Ill. Adm. Code § 700.400(c) (2001). It was Hollinger's burden to overcome the Department's *prima facie* case and to show that the penalties assessed against it should have been abated due to reasonable cause. Hollinger, an experienced

and knowledgeable business entity with its own accountants, provided no evidence that the law in section 803 or 804 was unclear, was not common knowledge, and was not readily available. As a result, Hollinger failed to satisfy its burden that the ALJ's *prima facie* findings and conclusions were not true and correct.

Our research reveals one opinion in Illinois where the Department assessed penalties based on an underpayment by the taxpayer, the trial court affirmed the penalties imposed, and the taxpayer asserted on appeal that that it relied on the work of its accountants and honestly believed that it would not be liable for the additional taxes. *Rockwood Holding Co.*, 312 Ill. App. 3d at 1132. However, in *Rockwood*, this court, relying upon *Miller Brewing Co. v. Korshak*, 35 Ill. 2d 86, 95, 219 N.E.2d 494 (1966), found that a taxpayer's "asserted belief" that it is not liable to pay certain taxes is an insufficient basis to set aside a penalty for nonpayment. *Rockwood*, 312 Ill. App. 3d at 1132. Although *Rockwood* did not examine whether a taxpayer's reliance on its accountant to prepare and to submit the proper estimated tax installments constituted reasonable cause, it clearly holds that a taxpayer's asserted belief that it is not liable to pay taxes is insufficient to abate a taxpayer penalty. Hollinger does not suggest that it even had an "asserted belief" that it was not liable to pay taxes, and it is essentially asking this court to find the exercise of ordinary business care and prudence where its own accountant, for whatever reason, chose to ignore the proper statutory method for estimating quarterly installments. We note that cases from other jurisdictions have rejected the existence of reasonable cause based upon the reliance of tax advisors when the taxpayer failed to timely file a return and the taxpayer was a business person or entity.

In *Coates v. Commissioner of Internal Revenue*, 234 F.2d 459 (8th Cir. 1956), the Eighth Circuit found that the taxpayer had large business interests and had employed an attorney, who was also a certified public accountant, to handle all of his tax matters including the preparation and filing of annual returns. The facts showed that for approximately 13 years, the taxpayer relied completely upon the advice and services of his attorney to ensure that all tax returns were prepared and filed when due. With regard to the year of 1950, the taxpayer asserted that he believed his attorney had filed all of the necessary tax documents. The tax court found that the taxpayer kept records showing his income and expenses for 1950 and that he submitted these documents to his attorney for the use of paying the applicable tax returns. The facts further showed that the taxpayer's attorney did not tell the taxpayer to file a declaration of estimated tax for 1950 and there was no discussion as to whether such a declaration

should be filed. The record also contained a letter drafted by the attorney which acknowledged that an estimated tax return for 1950 was not filed because it was difficult to determine the taxpayer's total estimated income since certain income from the operation of a farm could not be determined until the end of the year. The taxpayer signed this letter on the instruction of his attorney.

The tax court found in favor of the Commissioner of Internal Revenue and upheld a penalty imposed for failure to file the proper income tax within the time prescribed. On appeal, the taxpayer argued that reliance on his accountant constituted reasonable cause for failure to file the required declaration. The only reason that the taxpayer offered for this reliance was that the accountant had been handling his tax work for 14 years and the accountant was thoroughly familiar with his affairs.

The Eighth Circuit found that under the circumstances it was unable to conclude that that the taxpayer's failure to file a declaration for 1950 was due to reasonable cause. *Coates*, 234 F.2d at 462. The court reasoned that where the taxpayer had business experience and had been accustomed to filing estimated taxes for several years, his failure to file a declaration of estimated tax for 1950 could not be excused on the ground that he relied upon his accountant. *Coates*, 234 F.2d at 462. Specifically, the court held that the "mere placing of a tabulation of his books and records in the hands of his accountant and thereafter giving no more of his personal attention to the question of the filing of required returns does not appear to us to be the exercise of ordinary business care and prudence." *Coates*, 234 F.2d at 462.

We note that Hollinger makes an argument similar to the one made by the taxpayer in *Coates*, essentially that Hollinger gave its accountant the relevant documents and then paid little, if any, attention to the question of whether the filing was proper. This is Hollinger's position despite the fact that section 803 is the proper provision for calculating estimated taxes and section 804(c)(1)(B)(ii) relaxes the imposition of a mandatory penalty only if a return showing a liability for tax was filed by the taxpayer for the preceding taxable year. Hollinger, which itself employed experienced accountants other than Haas, knew that a return showing a liability for tax had not been filed for 1997. Like the taxpayer in *Coates*, Hollinger's business experience and the fact that it was accustomed to filing estimated taxes over many years supports the ALJ's finding that reasonable cause did not exist to abate the penalties at issue in this case.

In *Millette & Associates, Inc. v. Commissioner of Internal Revenue*, 594 F.2d 121 (5th Cir. 1979), the tax court concluded that the taxpayer, a corporation, was liable for a deficiency because the consolidated

return it filed for 1972 was not timely. The tax court also held that there was no reasonable cause for the late filing of Millette's return and that it was therefore liable for a tax penalty. On review to the Fifth Circuit, the taxpayer raised an argument that even if it filed a late return, its reliance on tax advisors to timely file the return was reasonable cause for the late filing which precluded any liability on its part for a tax penalty. The Fifth Circuit found that the tax court's determination was amply supported by the record noting that there was no proof that the 1972 return was timely filed. *Millette*, 594 F.2d at 123. The court further concluded that "it is well established that reliance on tax advisors is not reasonable cause for failure to file a return on time; the responsibility for assuring a timely filing is the taxpayer's." *Millette*, 594 F.2d at 124-25. The record also showed that Millette's president had no recollection of receiving the return from the preparer or of signing and filing it. In view of the evidence in the record that Millette's president did not take steps to ensure that the return was filed, the Fifth Circuit affirmed the tax court's holding that there was not reasonable cause for the failure to timely file the return. *Millette*, 594 F.2d at 125.

While *Millette* involved a late filing, the Fifth Circuit held that a corporation's reliance on its tax advisors was not reasonable cause for failing to timely file the return. In our view, the same logic can be applied to calculating estimated taxes where section 803 clearly establishes the proper method for calculating estimated tax. The evidence shows that Hollinger itself employed McBride, an experienced accountant, who could have determined that section 803 should have been applied and that the safe harbor rule in section 804(c)(1)(B)(ii) could only be used to offset what would otherwise be a mandatory penalty if a return showing a liability for tax was filed by the taxpayer for the preceding taxable year. 35 ILCS 5/804(c)(1)(B)(ii) (West 2000).

Moreover, while not involving an accountant's actions in ignoring the clear mandates of the Income Tax Act, several Illinois cases stand for the proposition that no reasonable cause exists to abate penalties imposed by the Department where the taxpayer itself has ignored the clear language of the Income Tax Act.

For example, in *Kroger*, the Department determined that gains realized by the taxpayer from the sale of certain leasehold interests were business income apportionable to Illinois under section 304 of the Income Tax Act. The Department imposed a penalty on the taxpayer for failure to report these gains on the taxpayer's Illinois tax return for 1986. The taxpayer argued that section 1501(a)(1) of the Income Tax Act did not include the "functional test" for calculating business income. It further argued that its failure to recognize the

functional test under section 1501 was reasonable because it overpaid taxes for 1986 and appellate courts in other states recognized that the gains of the type realized by the taxpayer were nonbusiness income. On review of the Department's imposition of the penalty, the appellate court affirmed the Department's determination on the basis that section 1501(a)(1) did include the functional test for calculating business income. *Kroger*, 284 Ill. App. 3d at 480. It further rejected the taxpayer's interpretation that section 1501 did not include the functional test based on the appellate court's express conclusion to the contrary in *National Realty & Investment Co. v. Department of Revenue*, 144 Ill. App. 3d 541, 554, 494 N.E.2d 924 (1986), which was decided in June of 1986. *Kroger*, 284 Ill. App. 3d at 484. The appellate court finally found that the taxpayer was liable for the penalties imposed. *Kroger*, 284 Ill. App. 3d at 484.

In *PPG Industries, Inc.*, cited above, the taxpayer interpreted section 1501 of the Income Tax Act to mean that no unitary business group existed between the taxpayer and its subsidiary. As a result of this determination by the taxpayer, the taxpayer did not report a gain that should have been reported on its 1987 Illinois tax return for the sale of its subsidiary's assets. The Department imposed penalties for not reporting this gain as Illinois business income. The taxpayer's construction of the statute was made despite the provision's clear definition of "unitary business activity" set forth in section 1501(a)(27) and "numerous facts" forming the basis for concluding that taxpayer and its subsidiary were in the same general line of business. On review of penalties imposed by the Department, this court found that the taxpayer did not exercise ordinary business care when it unilaterally determined that no unitary business group existed between the taxpayer and its subsidiary despite the clear language of section 1501. *PPG Industries, Inc.*, 328 Ill. App. 3d at 25-26. The court further found that reasonable cause for abatement did not exist and the penalties imposed by the Department were affirmed. *PPG Industries, Inc.*, 328 Ill. App. 3d at 26.

In *Peoria & Pekin Union Ry. Co.*, also cited above, the federal government altered the taxpayer's 1988 federal taxable income. The taxpayer unilaterally determined that it need not file an amended return under section 506(b) of the Income Tax Act, which required filing an amended return indicating a change in taxable income in the taxpayer's federal income tax return. 35 ILCS 5/506(b) (West 2000). The Department determined that the change in federal taxable income necessitated the filing of an amended return under section 506(b) and a penalty was imposed for a tax deficiency that occurred as a result of the change in the taxpayer's federal taxable income for the year 1988.

At a hearing, the ALJ found that taxpayer had a duty to report the alteration under section 506(b) and that the failure to do so showed a lack of ordinary business care and prudence. On review, the appellate court found that the ALJ's findings were not against the manifest weight of the evidence. *Peoria & Pekin Union Ry. Co.*, 301 Ill. App. 3d at 744. It further found that the taxpayer interpreted 506(b) "to its detriment" and that reasonable cause did not exist to abate penalties imposed by the Department. *Peoria & Pekin Union Ry. Co.*, 301 Ill. App. 3d at 744.

While these cases do not involve reliance upon a tax advisor, they do stand for the general proposition that no reasonable cause exists to abate Department penalties where the taxpayer ignored or misinterpreted the clear language of the Income Tax Act.

The only case relied upon by Hollinger is distinguishable. *Rohrabaugh v. United States*, 611 F.2d 211 (7th Cir. 1979), involved the late filing of an estate tax return by an inexperienced taxpayer. The taxpayer was the administratrix of the estate of her deceased father. The taxpayer had graduated from high school but had obtained no college or advanced education. She was employed as a telephone operator at a local hospital and had no experience in business matters. To administer the estate, the taxpayer retained an attorney who was experienced in preparing tax returns for her father and who practiced in the areas of estates and taxation. The taxpayer relied completely on her attorney and was never made aware that a federal estate tax return was due. This return was filed three months and a day after the filing deadline and the taxpayer's attorney admitted that the failure to timely file the return was an error on his part. A penalty for late filing was imposed on the taxpayer by the United States government. The amount was paid and the taxpayer filed a claim for refund, which was denied because she had failed to establish reasonable cause for the late filing. The taxpayer filed suit requesting a claim for refund in the federal district court, which granted summary judgment in her favor, and the government appealed to the Seventh Circuit.

On review, the Seventh Circuit affirmed the district court on the ground that the taxpayer was inexperienced with no knowledge of business affairs or of the due date of the return. *Rohrabaugh*, 611 F.2d at 216. It further recognized that the taxpayer gave the attorney all the necessary information, consistently communicated with the attorney concerning the progress of the proceedings, and received no notice of delinquency. *Rohrabaugh*, 611 F.2d at 216. The court also limited the holding to its facts and noted that the heavy burden of proving reasonable cause is on the taxpayer. *Rohrabaugh*, 611 F.2d at 219.

This case is distinguishable from the instant case because Hollinger was not an inexperienced taxpayer. To the contrary, the record shows that Hollinger was experienced, knowledgeable, and educated on the requirement that it was responsible for paying an estimated tax under the Income Tax Act. Additionally, we note that the significance of *Rohrabaugh* has been diminished by the United States Supreme Court's holding in *Boyle*, cited above, which did not overrule *Rohrabaugh* but noted that the *Rohrabaugh* holding was narrowly drawn to its facts and it stressed that the question of reasonable cause was an issue to be determined on a case-by-case basis. Contrary to the holding in *Rohrabaugh*, the *Boyle* Court ultimately held that it "requires no special training or effort to ascertain a deadline and make sure that it is met" and "[t]he failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent and such reliance is not 'reasonable cause' for a late filing." *Boyle*, 469 U.S. at 252, 83 L. Ed. 2d at 632, 105 S. Ct. at 693.

Under the facts in this case, where Hollinger was an experienced, knowledgeable, and educated taxpayer, we analogize the clear requirement to pay estimated tax under section 803 to the ease of determining a filing deadline. Therefore, we conclude that the Department's decision affirming the ALJ's recommendation was not against the manifest weight of the evidence. Other than attempting to distinguish the authority relied upon by the Department, Hollinger provides no pertinent authority that suggests a contrary result. Further, it is well established that the existence of reasonable cause justifying abatement of a tax penalty is a factual determination to be decided only on a case-by-cases basis. *PPG Industries, Inc.*, 328 Ill. App. 3d at 21. In this case, there was ample evidence in the record to support the Department's imposition of the penalties and that Hollinger failed to overcome its burden of showing that the Department's findings were not *prima facie* true and correct.

Hollinger raises the additional argument that the Department gave no weight to Hollinger's spotless filing record, which is a factor for consideration under section 700.400(d) of the Department's regulations. 86 Ill. Adm. Code § 700.400(d) (2001). As noted above, section 700.400(d) specifically provides:

> "The Department will also consider a taxpayer's filing history in determining whether the taxpayer acted in good faith in determining and paying his tax liability. Isolated computational or transcriptional errors will not generally indicate a lack of good faith in the preparation of a taxpayer's return." 86 Ill. Adm. Code § 700.400(d) (2001).

While a taxpayer's filing history should be considered under this sec-

tion, the statute does not set forth any guidance as to what weight an exemplary filing history should be given and Hollinger provides no authority interpreting this section. Finally, we would not call Hollinger's reliance on section 804 an "isolated computational or transcriptional error."

We do note that section 700.400(b) does state that the *"most important factor* to be considered in making a determination to abate a penalty will be the extent to which the taxpayer made a good faith effort to determine his proper tax liability." (Emphasis added.) 86 Ill. Adm. Code § 700.400(b) (2001). As we discussed above, whether a good-faith effort has been made depends on whether the taxpayer exercised ordinary business care and prudence and that is dependent upon the clarity of the law and the taxpayer's experience, knowledge, and education. 86 Ill. Adm. Code § 700.400(c) (2001). We have already found that there was evidence in the record to support the ALJ's finding that Hollinger did not exercise ordinary business care and prudence measured by the clarity of the law and Hollinger's experience, knowledge, and education.

For the reasons above, we reverse the trial court's decision with regard to the tax penalties assessed for the first two quarters of 1998 and order that the Department's administrative decision be reinstated with respect to those penalties.

Reversed.

CAHILL, P.J., and GORDON, J., concur.